UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

CIVIL ACTION NO. 08-CV-278-JMH

PAUL ROBERTS,                                                    PETITIONER,

VS:                    **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, *Warden*,                                     RESPONDENT.

Petitioner Paul Roberts is in the custody of the Federal Bureau of Prisons ("BOP"). He is confined in the Federal Medical Center located in Lexington, Kentucky ("FMC-Lexington). Roberts has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 and has paid the $5.00 filing fee. Roberts has also filed a "Motion for Temporary Restraining Order" [Record No. 4] in which he seeks expedited review of the petition.

This matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

As Roberts is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Under 28 U.S.C. § 1915(e)(2), if a district court determines that the petition fails to establish

adequate grounds for relief, it may dismiss the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## CLAIMS

Roberts seeks an Order directing the BOP to place him in a Community Corrections Center ("CCC") as early as September 9, 2008.[1] According to Roberts, the BOP has designated only a thirty-day CCC placement for him, from January 16, 2009 through February 14, 2009. Roberts alleges that the respondent has violated his due process rights under the Fifth Amendment of the United States Constitution by refusing to consider him either for sooner placement in a CCC.

## ALLEGATIONS OF THE PETITION

On September 17, 2004, Roberts was sentenced to a 57-month term of imprisonment.[2] Roberts states that his original date for release into a CCC was September 9, 2008. He alleges that the BOP

---

[1] CCC's are also known as "halfway houses." Prisoners near the end of their sentences are often placed there to live and work under supervision as a part of preparing them to transition back into the community.

[2] Roberts was convicted of drug offenses in the United States District Court for the Southern District of West Virginia (at Bluefield). *See United States of America v. Paul S. Roberts*, 1:03-CR-00226-1 [Docket Entry No. 35]. Roberts began serving his 57-month sentence on October 12, 2004 [*Id.*, Docket entry No. 42].

refuses to release him to a CCC on that date, because "he withdrew from the voluntary RDAP drug program and has four prior disciplinary actions." [Record No. 4, p. 2].[3]

Roberts contends that he should be able to serve a full ten-percent of his sentence (5.7 months) in CCC placement, instead of only 30 days. Roberts states that his son suffers from Downs Syndrome and that his wife is having financial difficulties while he is in prison. Roberts alleges that his family needs compel placement in a CCC earlier than January 16, 2009 " . . .so that he can be the husband and father he is supposed to be." [*Id*].

Roberts acknowledges that he has only lodged a BP-9 administrative appeal with FMC-Warden Dewalt, and that he has not completed the last two steps of the three-step BOP administrative remedy process. He argues that completing that process would be futile. He maintains that he should be excused from pursuing the next two steps of the exhaustion process set forth in 28 C.F.R. § 542.13-15.

---

[3] The RDAP is a program through which certain federal inmates receive various incentives for involvement in drug abuse treatment programs. 28 C.F.R. § 550.57. The BOP has discretion to allow an inmate a sentence reduction of up to one year if the inmate was convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. § 3621(e)(2)(B).

3

DISCUSSION

Prisoners who seek relief under 28 U.S.C. §2241 are ordinarily required to exhaust administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir.(Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first exhaust his available administrative remedies before filing a §2241 petition); *United States v. Oglesby*, 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson*, 503 U.S. 329, 335 (1992)).

The issue of whether to require exhaustion in a §2241 habeas proceeding such as this is not within the scope of the Antiterrorism and Effective Death Penalty Act ("AEDPA") or the Prisoner Litigation Reform Act ("PLRA"). Nor did the Supreme Court hold that failure to exhaust was not a violation of the PLRA, in *Jones v. Bock*, 27 S.Ct. 910, 920-21 (2007). Rather, exhaustion is a judicially created requirement for §2241 petitions, and the Court may waive the requirement if it finds that exhaustion is futile. *See Davis v. Keohane*, 835 F.2d 1147 (6th Cir. 1987); *Manakee Professional Medical Transfer Service, Inc. v. Shalala*, 71 F.3d 574 (6th Cir. 1995). Resort to administrative remedies is only futile

4

if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139 (D.C. Cir. 1987).

The administrative remedies for federal prisoners bringing a 28 U.S.C. §2241 petition are set forth in 28 C.F.R. §§542.10-16 (1997). Section 542.13(a) demands that an inmate first informally present his complaint to the staff (BP-8 form) before filing a formal request for an administrative remedy. If the inmate cannot informally resolve his complaint with staff, then he may submit the formal written complaint (BP-9) to the warden. An inmate who is not satisfied with the warden's response may submit an appeal (BP-10) to the appropriate regional director within 20 calendar days of the date the warden signed the response; and finally, if dissatisfied with the response of the regional director, then he may submit an appeal (BP-11) to the office of the BOP's General Counsel.

The BOP's response times are established in 28 C.F.R. §542.18, which provides that once the inmate has filed the proper form, "response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id*.

5

Roberts seeks to totally short-circuit the BOP exhaustion process, alleging that he should receive emergency relief because there are only a few months remaining until September 9, 2008, the date on which he states that he was originally scheduled for pre-release custody. Roberts does not inform the Court of the date on which Warden Dewalt denied his request for CCC placement commencing on September 9, 2008. The record reveals that he filed this § 2241 petition on June 19, 2008. Thus, between June 19, 2008 (at the latest) and September 9, 2008, Roberts could have availed him self of the next two steps of the BOP administrative remedy process (filing a BP-10 appeal to the BOP Mid-Atlantic Regional Office and a BP-11 appeal to the BOP Central Office). Instead, he voluntarily ignored the exhaustion process, filed a § 2241 action, and claims that his family circumstances justify excusing him from the process.

Accordingly, the Court is not inclined to grant the motion for expedited review. One of the reasons for requiring the exhaustion of administrative remedies is to prepare a record for the Court. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980), At this time, the current time the record is incomplete factually, a situation which would be remedied if Roberts had first exhausted the BOP administrative remedy process.

For that reason, the Court will dismiss the instant § 2241 petition without prejudice.

## EVALUATION OF MOTION FOR TEMPORARY RESTRAINING ORDER

Roberts has claimed that he will suffer irreparable injury if this cause is not taken up now, rather than later. The Court construes his request as one for preliminary injunctive relief and finds that such relief is not warranted.

The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiffs could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering the first factor in relation to this case - Roberts' likelihood of success on the merits - the outcome is highly questionable at this stage for three reasons. First, as noted, the record is incomplete absent evaluation of the CCC

7

placement issue by the BOP Mid-Atlantic Office and the BOP Central Office. Second, Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100 (1979).

The general rule is that the Due Process Clause of the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. at 88; *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976). Inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." *Hewitt v. Helms,* 459 U.S. 460 at 468, (1983).

In short, well- settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison (such as a CCC), security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983);

8

*Meachum v. Fano*, 427 U.S. 215, 225, (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976); *Bolger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir. 1995). Accordingly, the petitioner simply has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than earlier than the date on which the BOP assigns him.

Third, there is a federal statute, 18 U.S.C. § 3621(b), which governs the *place* of federal inmates' imprisonment. Summarized, this statute sets forth the criteria which the BOP must consider in making a determination as to where an inmate will serve his federal sentence. Section 3621(b) provides as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
>> (1) the resources of the facility contemplated;
>>
>> (2) the nature and circumstances of the offense;
>>
>> (3) the history and characteristics of the prisoner;
>>
>> (4) any statement by the court that imposed the sentence-
>>
>>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

9

>    (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

As noted, in this case, the issue of earlier CCC placement has not been fully exhausted. Roberts has not even provided the Court with the Warden's response to the BP-9 appeal. The Court does not have the benefit of knowing if the Warden considered the factors set forth in § 3624(c) and Roberts admits that the two higher levels have not addressed the issue. For that reason, the Court will not at this time counter the BOP's decision to limit Roberts' tenure in a CCC to 30 days.

Additionally, pre-release custody is governed by 18 U.S.C. § 3624(c), which provides as follows:

> (c) Prerelease custody. - -
>
> (1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c).[4]

---

[4] The legislative history of this provision reveals that the 2008 Amendments to this subsection are found in Pub. L. 110-199, § 251(a). That section was enacted on April 9, 2008, and is referred to as the "Second Chance Act of 2007." That legislation rewrote

In *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007), the Tenth Circuit addressed a similar claim by a federal inmate who demanded placement in a CCC earlier than the date set by the BOP. There, the court examined the earlier version of § 3624(c) and concluded that Wedelstedt's remedy was limited only to the BOP being required to *consider* him for a transfer to a CCC for the last ten percent of his sentence. *Wedelstedt*, 477 F. 3d at 1168. The relevant language from the *Wedelstadt* opinion reads as follows:

> In determining whether Wedelstedt should be transferred, the BOP must consider the factors set forth in 18 U.S.C. §3621(b) without regard to the invalid regulations. **This court, however, takes no position on whether Wedelstedt should be transferred and, as Wedelstedt himself acknowledges, he has no entitlement to such a transfer.**

*Id*. *See also Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004) (although the BOP has the *authority* to place a prisoner in an RRC

---

subsection (c) of § 3624, which formerly read as follows:

> "(c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody."

18 U.S.C.A. § 3624.

or a CCC for more than the final 10% of his sentence, the BOP is not *required* to do so).[5]

As to factor (2), Roberts has alleged irreparable injury because of personal and financial hardship on his wife and son. Incarceration causes adverse consequences on the family of the convicted person. While that outcome is regrettable, the fact remains that Roberts was sentenced to a serve a 57-month term. As noted, Roberts has no constitutional right to serve his sentence in a facility more to his choosing for any certain amount of time. *See Ogunyale v. Phillips*, 2008 WL 1820652 (N. D. W. Va., April 22, 2008) (Slip Copy) (prisoner is not entitled to a specific amount of time in a halfway house; rather, a prisoner is entitled only to

---

[5]

*Elwood* states as follows:

It [18 U.S.C. § 3624(c)] only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP **may** place a prisoner in a CCC for six months, or more. Under § 3624(c)) the BOP must formulate a plan of pre-release conditions. This plan **may** include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. **Likewise, the obligation is qualified by the phrase "to the extent practicable."** Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

*Elwood v. Jeter*, 386 F.3d at 846.

have the BOP consider his application for CCC placement in accordance with the five factors set forth in § 3621(b)).

Additionally, Roberts alleges that he is being punished because he withdrew from the "voluntary" RDAP drug program and because he has been charged with several disciplinary infractions. Courts have considered the effect of a federal inmate's withdrawal from other BOP rehabilitative programs, such as the BOP's literacy program established in 18 U.S.C. § 3624(f). In *Burrell v. Gunja*, 2001 WL 34713499 (D. Md., June 8, 2001) (Only Westlaw citation currently available), the prisoner voluntarily withdrew from the BOP literacy program, and therefore accrued GCT at a rate of 42 days per year instead of 54 days per year. The prisoner argued that he had a liberty interest in accruing GCT at a rate of 54 days per year. The court held that under 28 C.F.R. § 523.20(c)(2), the BOP was justified in awarding the prisoner with fewer days of GCT per year.

*Burrell* instructs that where a prisoner elects to withdraw from a rehabilitative program, the BOP is entitled to withhold benefits or refuse to confer privileges on the prisoner, even though the prisoner's refusal to participate in the program might not subject him to disciplinary sanctions. Here, the Court lacks full information as to the specifics of Roberts' case (due to failure to exhaust). The facts he has disclosed, however, would

13

indicate that the BOP was acting within its discretion by awarding a shorter tenure in the CCC, given his withdrawal from the RDAP and/or a history of prison disciplinary infractions.

The Court finds that denying Petitioner Roberts the emergency relief he requests now will not result in *irreparable injury*, which is the legal standard. Finally, as to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The Court is not convinced that the public interest would be served by interfering with the BOP's discretion in selecting where this prisoner will spend the rest of his federal sentence and for how long he will be at any location.

CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Petitioner Paul Roberts' "Motion for Temporary Restraining Order" [Record No. 4] is **DENIED**.

(2) Paul Roberts 'petition for writ of habeas corpus is **DENIED** and this action will be **DISMISSED** without prejudice from the docket of the Court.

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

This the 2nd day of July, 2008.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge